IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LISA KIMBER                                                                                   PLAINTIFF

v.                                        NO. 4:04CV01319 HDY

JO ANNE B. BARNHART,                                                                    DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

The record reflects that in July of 2001, plaintiff Lisa Kimber ("Kimber") filed applications for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In June of 2004, the ALJ issued a ruling adverse to Kimber. She then appealed that ruling to the Appeals Council. In September of 2004, the Appeals Council affirmed the ruling of the ALJ. That ruling therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In November of 2004, Kimber commenced the proceeding at bar in which she challenged the final decision of the Commissioner.

The sole inquiry for the Court is whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012. The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion. See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify those findings. The Commissioner made findings pursuant to the five step sequential evaluation process.[1] At steps one through four, the Commissioner found the following: Kimber has not engaged in substantial gainful activity since the alleged onset date of October 15, 1998; she is severely impaired as a result of a "severe disorder of the urinary tract," see Transcript at 17; her impairment is not listed in, nor medically equal to one listed in, the regulations; and she does not have sufficient residual functional capacity to perform her past relevant work as a waitress. With respect to Kimber's residual functional capacity, the Commissioner specifically found the following:

---

[1] The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

> After a review of the evidence, the Administrative Law Judge concludes that the claimant retains the residual functional capacity to lift and carry up to 10-15 pounds occasionally; she can stand or walk for 4 hours in an 8-hour work period, 1-1 ½ hours without interruption; she can sit for a total of 6 hours in an 8-hour work period, 2 hours without interruption; and she can occasionally climb, balance, stoop, crouch, kneel, or crawl.

See Transcript at 15. The Commissioner then proceeded to step five in the sequential evaluation process. At that step, the Commissioner was required to show that "there [were] significant numbers of jobs existing in the national, regional, or local economy that the claimant can perform considering her age, education, past work experience and residual functional capacity." See Document 17. The Commissioner found that Kimber possessed the residual functional capacity and other vocational factors to perform a significant range of light work and that work she could perform existed in significant numbers in the economy. The Commissioner specifically found that she could perform work as a ticket seller or clerk. On the basis of the foregoing, the Commissioner concluded that Kimber was not disabled within the meaning of the Act.

Are the Commissioner's findings supported by substantial evidence on the record as a whole? Kimber thinks not. She advances a procedural and substantive reason why she believes they are not. With respect to the procedural reason, she maintains that she was not fully apprised of her right to retain an attorney to represent her at the administrative hearing. It is her position that the Commissioner failed to provide sufficient notice of that right. Kimber specifically maintains the following:

> The ALJ had an obligation to advise the Plaintiff regarding her rights to legal representation. In the discussion at the hearing, the ALJ advised the Plaintiff that she could have someone to represent her at the hearing but that the Plaintiff stated she did not have the money. ... Plaintiff was also not aware that lawyers would take the case on a contingency basis. ... It was clear the Plaintiff did not receive adequate notice of her right to legal representation. This concern involves a question of law.
>
> HALLEX 1-2-6-52A provides that the ALJ must insure an unrepresented claimant is capable of making an informed consent and should inquire into whether the claimant received the hearing acknowledgment and, if so, did the individual understand the information contained in that document. The ALJ must explain the availability of both free legal services and contingency representation as well as avers to organizations that assist persons in obtaining legal representation. Finally the ALJ must enter into the acknowledgment and the claimant's decision as to proceed pro se.
>
> ...
>
> This is a potentially winnable case and had the ALJ taken the time to give her the opportunity to retain counsel, counsel could have developed the medical evidence to place the claim in a much more favorable light. Further questions would have been asked the Plaintiff, for example, concerning her daily activities, the side affects of medications (nothing was asked), and what factors aggravated or precipitated her incontinence and other discomfort (i.e., stress). And the degree of her incontinence. Further counsel would have, in all likelihood, have obtained and filed with the ALJ the Plaintiff's voiding diary as alluded to by Dr. Reede-Jones. ... This would have perhaps given further elucidating light to the most disabling component of the Plaintiff. That is, her need to go to the restroom very frequently. The ALJ could have also been placed on notice of the learned treaties that were submitted in support of Plaintiff's claim showing that her testimony dovetailed neatly with the typical signs and symptoms that were found in interstitial cystitis. ... Nowhere in the record, however, does it show the ALJ ever discussed this important evidence and how it bolstered the Plaintiff's testimony. ...

See Document 8 at 17-19. [Emphasis in original].

In considering Kimber's procedural challenge, the Court makes note of two matters. First, the Commissioner has an obligation to fully and fairly develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). This obligation is enhanced when the claimant is without the benefit of counsel. See Hildebrand v. Barnhart, 302 F.3d 836 (8th Cir. 2002). Second, an administrative hearing is not an adversarial proceeding. As the Court of Appeals noted in Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004):

> The [Commissioner] possesses no interest in denying benefits and must act neutrally in developing the record. See Richardson v. Perales, 402 U.S. 389 ... (1971) ("The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts."); Battles v. Shalala, ... (noting that the Commissioner and claimants' counsel both share the goal of assuring that disabled claimants receive benefits).

The Court now turns to address Kimber's contention that she was not fully apprised of her right to retain an attorney to represent her at the administrative hearing.

The Commissioner maintains, and the Court agrees, that "[t]he record contains at least three notices within the two years before the May 20, 2003, hearing that discuss Plaintiff's right to representation, including the right to free representation and the limitation of attorney fees to twenty-five percent of past due benefits." See Document 13 at 10. Kimber does not dispute that she received the notices. When she appeared at the administrative hearing without an attorney, the following exchange occurred between the ALJ and Kimber:

>ALJ: This is a hearing in the claim of Lisa R. Kimber, …  This is a claim for disability insurance benefits and supplemental security income …  We have in attendance Vocational Expert, Daniel C. Lustig[,] and the claimant appears here without legal representation.  Ms. Kimber, are you aware that you can have someone to represent you for these hearings if you want to get them?
>
>CLMT: Yes, sir, it's just I didn't have the money.  I didn't know.
>
>ALJ: Well, there's lawyers advertised in the paper, you know, on a contingent fee basis and have you ever talked to any of them?
>
>CLMT: No, sir.
>
>ALJ: Ever call any of them?
>
>CLMT: No, sir.
>
>ALJ: By the same token you can have a hearing without legal representation.  Is that what you want to do?
>
>CLMT: Yes, sir, I guess so.
>
>ALJ: Well, yes or no?
>
>CLMT: Yes.
>
>ALJ: All right. …

<u>See</u> Transcript at 32-33.

The Court has thoroughly reviewed the record in this proceeding.  The Court finds that Kimber was fully apprised of her right to retain an attorney to represent her at the administrative hearing and that the Commissioner did not err in allowing Kimber to proceed without the benefit of counsel.  See Highfill v. Bowen, 832 F.2d 112 (8th Cir. 1987) (lack of counsel does not in itself deprive claimant of fair hearing).  Kimber was notified of her right to retain an attorney on several occasions prior to the hearing, and the Commissioner addressed Kimber's lack of counsel at the beginning of the hearing.  Kimber initially equivocated as to her desire to go forward without an attorney, e.g., when asked whether she wanted to proceed without an attorney, she responded, "Yes, sir, I guess so."  See Transcript at 32.  The Commissioner quite properly asked a follow-up question in an apparent attempt to determine whether Kimber indeed wanted to proceed with the hearing.  Kimber answered by saying that she wanted to proceed.  Thus, she clearly chose to proceed without counsel.  The only question for the Court is whether the Commissioner fully and fairly developed the record with respect to the severity of Kimber's impairments.

Kimber's substantive reason for challenging the Commissioner's findings is that the severity of her impairments were not properly adjudged, particularly the frequency with which she is required to void and the pain associated with her condition.  Kimber specifically maintains the following:

> The ALJ ... retained the services of a vocational expert and asked the vocational expert, Daniel Lustig, to consider an individual with certain environment limitations. ... Mr. Lustig concluded that such an individual could perform other types of work, but not the Plaintiff's past relevant work. ... In this particular instance, however, it is clear the decision is not supported by substantial evidence. This is an unusual type of case because the most disabling symptom is not pain but rather the frequency of voiding. Therefore the credibility as to whether the Plaintiff had to have frequent trips to the restroom was critical. This was so because Mr. Lustig, in his opinion, felt an individual that would have to make trips to the bathroom at least ten times in eight hours could not perform employment. ...
>
> The evidence clearly establishes the Plaintiff had these frequencies. Dr. Reede-Jones noted the Plaintiff had frequency of that nature ... Dr. Nunn noted the same ... And so did Dr. S.T. Houston ...
>
> Mrs. Kimber furnished a diary that was considered by Dr. Reede-Jones to support this ... It is not certain whether this diary appears in the record but counsel for the undersigned has not been able to locate same. These symptoms and the Plaintiff's allegations were bolstered by learned treaties submitted in support of her claim ...

See Document 8 at 13-14.

As the Court noted above, the Commissioner has an obligation to fully and fairly develop the record. One aspect of that obligation is to correctly apply the testimony of a vocational expert. See Penn v. Sullivan, 896 F.2d 313 (8th Cir. 1990) (Commissioner's misapplication of vocational expert's testimony warranted reversal of disability determination where Commissioner ignored critical assumption underlying vocational expert's testimony).

-8-

The record in this proceeding reflects that Kimber suffers from, <u>inter</u> <u>alia</u>, interstitial cystitis.[2]  Apparently, because of this condition, her treating physician, Dr. S.T. Houston, and at least two other physicians have found that Kimber has a need to void on a frequent basis.  For instance, the record contains a March 8, 2004, letter from Dr. Gail Reede Jones in which she notes the following:

> [Kimber] is a 37-year-old woman who returns today.  She did bring her voiding diary in with her which was from February 20, 2004 through [March] 4, 2004.  She had a significant number of voids on a daily basis of just about hourly especially during the day, if not twice in an hour and this seemed to taper somewhat at night.  She still had some frequency at night as well.

<u>See</u> Transcript at 176.  The record suggests that Kimber's condition has responded favorably in the past to a medication called Elmiron.  The record with regard to that course of treatment, though, is sadly inconclusive.  Kimber indicates that her failure to take this medication was due to finances, but the Commissioner points out that there is no evidence that Kimber sought financial assistance in obtaining the medication.

At the administrative hearing, the ALJ posed two hypothetical questions to the vocational expert.  The hypothetical questions and the answers thereto were as follows:

---

[2] Dictionary.com provides the following definition of interstitial cystitis from the <u>American Heritage Stedman's Medical Dictionary</u>: "A chronic inflammatory condition of unknown cause involving the mucosa and muscular tissue of the bladder and resulting in reduced bladder capacity."

Q. Let's assume a hypothetical individual that's 36 years of age with a high school education and vocational background of the claimant. Let's further assume that this hypothetical individual can lift 10 or 15 pounds occasionally, that the individual can stand or walk for a total of two hours out of an eight hour work day. I'm going to back up now and say four hours and she can stand or walk a total of one to one and a half hours without interruption. That the individual can sit for a total of six hours, two without interruption. The individual can occasionally climb, balance, stoop, crouch, kneel, crawl. No significant problem with the ability to reach or to handle or feel. Push, pull would be limited to 10 to 15 pounds and no impairment in ability to see, hear or speak. I'm not aware of any environmental restrictions. Would that hypothetical individual be able to engage in the past relevant work of the claimant?

A. No.

Q. Would there be other jobs in the regional or national economy to which that hypothetical could perform?

A. Yes.

Q. Would you identify them for me, please?

A. Ticket seller, which is an unskilled, light lifting occupation. And various types of clerks, for instance bill sorters or credit card clerk, assignment clerk. Those are semi-skilled, sedentary lifting. I can give you numbers on ticket sellers.

Q. Okay.

A. That's 6,000 in the area, 31,000 in Arkansas, frequent two million nation wide. The clerk, which is semi-skilled, sedentary lifting is 1,200 in the area, 3,200 in Arkansas, 300,000 nation wide.

-10-

> Q. Okay. The second hypothetical, I'm going to just add one thing to this and it would be the individual would be able to take as many unscheduled trips to the bathroom of at least 10 times for eight hours. Would that affect the job?
>
> A. Yes, it would preclude employment.
>
> Q. It would what?
>
> A. It would preclude employment.

See Transcript at 47-49.

The foregoing reflects that in asking the first hypothetical question, the ALJ made no mention whatsoever of Kimber's need to void on a frequent basis. The condition, however, was clearly of such significance that the ALJ felt compelled to include it in the second hypothetical question. The vocational expert's answer to the second hypothetical question was unequivocal: the hypothetical individual's need to void at least ten times during an eight hour work day would preclude employment. The finding with regard to the frequency of Kimber's need to void, the effectiveness of Elmiron in treating the condition, and her financial ability to obtain the medication are crucial determinations. Given the lack of clarity concerning her need to void, the ALJ's decision to not incorporate the vocational expert's answer into the second hypothetical question is not supported by substantial evidence on the record as a whole.

In conclusion, the Court is convinced that the Commissioner's findings are not supported by substantial evidence on the record as a whole.  The Commissioner was under an obligation to fully and fairly develop the record but failed to do so.  Although the record suggests that Kimber's need to void has responded favorably in the past to Elmiron, the record with regard to that course of treatment is inconclusive.  The Commissioner should obtain evidence from Kimber's treating physicians on this issue and should also develop the record adequately concerning her ability to obtain relief for her condition.  The Commissioner's decision is therefore reversed, and this proceeding is remanded for the purpose of re-developing the record.  This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).

IT IS SO ORDERED this ___17___ day of November, 2005.

_____
UNITED STATES MAGISTRATE JUDGE